# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | CR. No. C-10-20-3 |
| v. | § | (C.A. No. C-13-149) |
| | § | |
| TYRONE EUGENE JORDAN, | § | |
| | § | |
| Defendant/Movant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Tyrone Eugene Jordan's (Jordan) motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255, along with his memorandum of law in support. D.E. 247.[1] Jordan also filed a motion for an evidentiary hearing. D.E. 248. The government responded and Jordan filed an opposition to the government's response. D.E. 259, 261. After considering the motion, response, Jordan's opposition, the record of the prior proceedings, and for the reasons stated herein, the Court denies Jordan's motion and also denies him a certificate of appealability.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

---

[1] Docket entry references are to the criminal case.

## II. BACKGROUND

Jordan was indicted on January 13, 2010. D.E. 25.[2] The multi-count indictment charges Jordan and Arthur Apac in Counts Three and Four with conspiracy to launder money arising from drug transactions in violation of 18 U.S.C. § 1956(a)(1) and (h) and conspiracy to transport unlawful aliens within the United States in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), 1324(a)(1)(A)(v)(I), and 1324(a)(1)(B)(i). D.E. 25. The indictment was sealed until after Jordan's arrest. D.E. 28. Arthur Apac and Jesus Liscano were both named in the Second Redacted Indictment along with Jordan.

Jordan was arrested on January 19, 2010, and made his initial appearance in federal court the next day. D.E. 31. At his initial appearance, he was given a copy of the indictment

---

[2]   The indictment is shown on the Court's docket sheet as the Second Redacted Indictment. It omits or redacts the signature of the Foreperson of the Grand Jury, but states that the original signature is on file. D.E. 25.

naming him as a defendant in Counts Three and Four. D.E. 180, pp. 5-6.[3] He was arraigned on January 25, 2010, at which time he confirmed he received the indictment.[4]

Jordan's trial began on April 12, 2010, and continued through April 14, 2010. Apac testified for the government during Jordan's trial. The jury found Jordan guilty on Counts Three and Four of the Indictment. D.E. 100.

A PSR was ordered at the conclusion of the trial. D.E. 101. Jordan objected to the PSR on numerous grounds. D.E. 111. The government responded. D.E. 119. The PSR ultimately calculated Jordan's total offense level at 34 and his criminal history category as I for a guideline sentencing range of 151-188 months, with a maximum statutory sentence of 20

---

[3]        24 THE COURT: All right. And Mr. Jordan, what is your
           25 true name, sir?
           1 DEFENDANT JORDAN: Tyrone Eugene Jordan.
           2 THE COURT: Have you been given a copy of the
           3 indictment in your case?
           4 DEFENDANT JORDAN: No, ma'am.
           5 THE COURT: Okay. For the record, I'm having the
           6 marshal give Mr. Jordan a copy of his charge.

Id.

[4]        10 THE COURT: Mr. Jordan, have you been given a copy of
           11 the Indictment in your case?
           12 THE DEFENDANT: Yes, ma'am.
           13 THE COURT: Have you read it and discussed it with
           14 your lawyer?
           15 THE DEFENDANT: Have I consulted?
           16 THE COURT: Have you read the Indictment and
           17 discussed the case with your lawyer?
           18 THE DEFENDANT: Yes. Yes, your Honor.

D.E. 175, p. 5.

years for Count Three and a maximum statutory sentence of 10 years for Count Four. D.E. 120 at ¶¶ 74-76. The Probation Department restated Jordan's objections and the evidence in support of the PSR provisions and did not make any change. D.E. 122.

At sentencing, the Court imposed a sentence of 120 months in the Bureau of Prisons, followed by 3 years supervised release on each count to run concurrently and a $100 special assessment for each count. D.E. 131, 132. Jordan appealed to the Fifth Circuit Court of Appeals which vacated his sentences and remanded for resentencing on the ground that $304,500 should not have been included in the calculation of the amount of funds laundered. D.E. 218.

Jordan was resentenced by this Court on February 16, 2012, to 63 months in the Bureau of Prisons on Counts Three and Four to run concurrently. D.E. 230. Jordan again appealed. The Fifth Circuit affirmed his sentence on January 10, 2013. D.E. 246. Jordan filed his timely § 2255 motion in May 2013.

### III.   MOVANT'S CLAIMS

Jordan raises several related claims focusing on the Second Redacted Indictment. His claims are not clear, but Jordan appears to claim that the indictment is null and void and that this Court had no jurisdiction to try him. He claims that the grand jury did not meet before issuing the Second Redacted Indictment, which resulted in the Second Redacted Indictment being of no effect. D.E. 247 at p. 4.

4

Jordan next claims that counsel was ineffective on the grounds that he did not require the indictment to be resubmitted to the grand jury. Id.

Jordan further claims that he was deprived of due process of law because he was tried on a defective indictment and that there was no grand jury the week of January 13, 2010. Id.

Jordan finally claims he is actually innocent because there can be no trial without a valid indictment.

In Jordan's Opposition to the Government's Motion to Dismiss, Jordan for the first time claims that his appellate counsel was ineffective on the grounds that he failed to raise a challenge to the sufficiency of the evidence to support his conviction.

## IV.   ANALYSIS

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).

**B.      Standard for Claims of Ineffective Assistance of Counsel**

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under Strickland, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. Glover v. United States, 531 U.S. 198, 203 (2001); United States v. Herrera, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

### C.   Second Redacted Indictment

Arturo Apac and Jesus Liscano were arrested in December 2009 after a lengthy investigation. They were indicted by the grand jury on four counts and the indictment included a notice of criminal forfeiture as to the two named defendants. The First Redacted[5] Indictment as to Apac and Liscano was unsealed on January 14, 2010. D.E. 14. On the same date, the Second Redacted Indictment naming Jordan as a conspirator for Counts Three and Four was filed, but sealed. The indictments are identical except that the Second Redacted Indictment shows Jordan's name in addition to Apac's name in Counts Three and Four. Ultimately a fourth defendant was arrested. He was charged as an additional defendant in Count Four. That indictment, D.E. 34, is also dated January 13, 2010. The original indictment with the grand jury foreperson's signature is kept by the District Clerk, but indictments from which the name of the grand jury foreperson is redacted are filed in the docket pursuant to local rule. CrLR 24.2 ("The names of grand jurors shall be held confidential.").

1. *Complaint that Second Redacted Indictment was not submitted to the grand jury*

Jordan complains that the addition of his name and the change in title of the Second Redacted Indictment occurred without resubmission to the Grand Jury. Jordan also claims that the Second Redacted Indictment was not signed by the grand jury foreperson. D.E. 247 at 4. As a result of these alleged failures, Jordan claims that the indictment is null and void.

---

[5]   The use of "redacted" in the title refers to the replacement of the grand jury foreperson's signature by the notation "Original Signature on File" on the docketed copy of the indictment and to the omission of indicted, but not yet arrested, defendants, Tyrone Jordon and Gabriel Covarrubia.

Although the indictments are titled and redacted differently, they are merely different versions of the same original indictment returned by a single Grand Jury that was filed with the District Clerk on January 13, 2010. <u>See</u> D.E. 34 (unsealed complete indictment naming all four defendants). The indictment was redacted differently to omit the names of defendants who had not yet been arrested. <u>See</u> Fed. R. Crim. P. 6(e)(4).[6] Indictments are also redacted to omit from the public file the name of the foreperson of the grand jury as required by local rule.

Even if the indictment was not signed by the grand jury foreperson as Jordan alleges, the indictment would not be defective. Rule 6(c) specifies the duties of a grand jury foreperson.[7] Rule 7 sets out the requisites of an indictment which shall be signed by an

---

[6]      (4) Sealed Indictment. The magistrate judge to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial. The clerk must then seal the indictment, and no person may disclose the indictment's existence except as necessary to issue or execute a warrant or summons.

<u>Id.</u>

[7]      (c) Foreperson and Deputy Foreperson. The court will appoint one juror as the foreperson and another as the deputy foreperson. In the foreperson's absence, the deputy foreperson will act as the foreperson. *The foreperson may administer oaths and affirmations and will sign all indictments*. The foreperson--or another juror designated by the foreperson--will record the number of jurors concurring in every indictment and will file the record with the clerk, but the record may not be made public unless the court so orders.

Fed. R. Crim. P. 6(c) (emphasis added).

attorney for the government. Rule 7(c)(1). Rule 7 does not require the signature of a grand jury foreperson.[8]

The Supreme Court has characterized the foreman's duty to sign the indictment as a "formality," and the absence of the foreman's signature as "a mere technical irregularity." Hobby v. United States, 468 U.S. 339, 345 (1984) (citing Frisbie v. United States, 157 U.S. 160, 163-65 (1895)); United States v. Marshall, 910 F.2d 1241, 1143 (5th Cir. 1990) (holding that absence of grand juror foreperson's failure to sign the indictment did not rob the district court of jurisdiction where other evidence supported finding that grand jury indicted defendant).[9]

---

[8]   (c) Nature and Contents.

> (1) In General. The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged *and must be signed by an attorney for the government.* It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. . . .

Fed. R. Crim. P. 7(c) (emphasis added).

[9]   "At his sentencing, Marshall failed to object to the lack of a foreperson's signature and made no objection to the Government's supplement of the record on appeal with a grand jury concurrence form signed by the foreperson. This concurrence form, which indicates that eighteen (18) jurors concurred in the finding of the indictment against Marshall, offers sufficient proof that Marshall was indeed lawfully indicted. Therefore, the lack of the foreperson's signature on the indictment does not deprive the district court of jurisdiction."

Id.

Jordan also claims that the Grand Jury did not meet on January 13, 2010, and that the charges against him were not submitted to the Grand Jury. Jordan produced no evidence in support his claim.

There is a presumption of regularity that attaches to Grand Jury proceedings and to an indictment such that challengers to the regularity of those proceedings have an initial burden to produce evidence of an irregularity before the government has any duty to respond. Hamling v. United States, 418 U.S. 87, 139 n.23 (1974); United States v. Kilpatrick, 821 F.2d 1456, 1473 (10th Cir. 1987) (challenge to grand jury proceedings failed to overcome presumption of regularity); United States v. Jones, 766 F.2d 994, 1001 (6th Cir. 1985) (challenge to validity of grand jury proceeding did not overcome presumption of regularity); United States v. Causey, 2004 WL 1243912 at *23 (S.D. Tex., May 25, 2004) (unsupported claim of bias by grand juror insufficient to rebut presumption of regularity)(designated unpublished).

Jordan's unsupported claim that the Grand Jury did not meet on January 13, 2010, is insufficient to rebut the presumption of regularity that attaches both to the indictment and to grand jury proceedings. Jordan's complaint that the Second Redacted Indictment was defective for lack of the Grand Jury Foreperson's signature is without merit. The Court rejects Jordan's first ground of complaint.

2. *Counsel was ineffective on the grounds he failed to ensure that the Second Redacted Indictment was submitted to the grand jury*

Jordan complains that his counsel's failure to require resubmission of the Second Redacted Indictment to the grand jury constituted ineffective assistance. This claim is premised on Jordan's assumption that there was in fact an irregularity in the grand jury proceedings regarding the Second Redacted Indictment. This Court has already determined that Jordan has not stated a sufficient factual predicate to overcome the presumption of regularity and has failed to state a claim regarding the signing of the indictment.

Counsel's failure to raise a meritless argument cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue. See, e.g. United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999); Williams v. Collins, 16 F.3d 626, 634-35 (5th Cir. 1994). No ineffective assistance is shown.

3. *Claims of Due Process violation and Miscarriage of Justice due to failure of grand jury to indict*

Jordan's third ground of complaint again assumes, without evidence other than the redaction of the signature in the docketed copy of the indictment, that the grand jury did not issue the Second Redacted Indictment. In this ground, Jordan also seems to claim that no grand jury met on January 13, 2010.[10] He offers no evidentiary support for this claim, nor

---

[10] "This Court have allowed him [Jordan] to be tried on an indictment that was not a true bill by the grand juror and knowingly that a grand juror meet every 30 days which is 4-week in a year and was not sitted [sic] on 1/13/10 this indictment would have been signed by a foreperson not alledged [sic] that the original was alledged [sic] signed it would have showed fore person signature." D.E. 247 at p. 4.

does he state how he knows when the grand jury met. This ground is without merit for the reasons discussed on page 9, underline supra.

4. *Claim of "actual innocence"*

Jordan finally claims that because the indictment was not issued by a grand jury, there could be no trial and he could not be found guilty. The grand jury returned the indictment that charged Jordan in Counts Three and Four. Jordan was tried by a duly constituted petit jury that found him guilty on Counts Three and Four. Jordan has twice appealed and his conviction is final. He has not demonstrated any basis for it to be set aside.

5. *Alleged ineffective assistance of appellate counsel*

In Jordan's opposition to the government's motion to dismiss, he claims appellate counsel was ineffective on the ground that he failed to challenge the sufficiency of the evidence and that Jordan and counsel were not "of one mind" regarding the appeal. In support Jordan filed the affidavit of his wife and correspondence between him and his wife and his wife and counsel. The affidavit and correspondence confirm that it was Jordan's desire that counsel challenge the sufficiency of the evidence on appeal. Counsel's response to Jordan was that it was not a winning argument. Counsel presented sentencing issues on appeal that resulted in a remand for resentencing and that ultimately reduced Jordan's sentence by nearly half.

Where a petitioner argues that counsel failed to assert or fully brief a particular claim, he must show that his attorney's performance was both deficient and prejudicial. <u>Penson v. Ohio</u>, 488 U.S. 75, 84-85 (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 689–94 (1984)). Appellate counsel is not ineffective because he failed to raise all of the issues presented by the defendant or because he failed to raise every possible point on appeal. <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983) (indigent defendant not entitled to have appellate counsel raise every nonfrivolous ground on appeal "if counsel as matter of professional judgment decides not to  present those points"); <u>Sharp v. Puckett</u>, 930 F.2d 450, 452 (5th Cir. 1991). From the correspondence produced by Jordan in support of his claim, it is apparent that appellate counsel exercised professional judgment in deciding not to raise the sufficiency claim.

Moreover, Jordan cannot show prejudice from counsel's failure to challenge the sufficiency of the evidence on appeal. The Fifth Circuit Court of Appeals described some of the evidence supporting Jordan's conviction as follows:

> Jordan's convictions arose from his participation in an alien– and drug-smuggling enterprise. Arturo Apac began this enterprise in 2008, using airplanes to transport drugs, drug proceeds, and illegal aliens. Jordan met Apac in November 2008, in consultation with Apac about his financial arrangements. Starting in December 2008, Apac made three payments totaling $114,000 toward the purchase of a Cessna airplane: $5,000 wired from a bank account under one of Apac's front businesses, Global Labor Management; $15,000 delivered in cash by two of Apac's pilots; and $94,000 routed through Jordan's wife's bank account. Witnesses testified at trial to Jordan's presence for the $15,000 payment; Jordan concedes his involvement as to the $94,000.
>
> Law enforcement learned of Jordan's association with Apac during an airplane seizure in April 2009. Apac planned a trip from Houston to Atlanta to transport 80 to 90 pounds of cocaine; witness testimony at trial indicated Jordan knew

13

of the cocaine on the airplane. Jordan traveled with Apac from Houston to Atlanta and intended to continue to Miami. Apac cancelled the Miami trip and instead transported $304,500 in concealed cash back to Houston. Federal authorities searched the Cessna, discovered the $304,500, and confiscated both. An investigation revealed both Apac's operation and Jordan's involvement. Agents began surveillance on Jordan as a result. Jordan was later identified in a traffic stop as the driver of a vehicle carrying three illegal aliens.

****

The court heard testimony that Apac informed Jordan the transferred currency belonged to criminals and that Jordan saw large quantities of cocaine in connection with his work for Apac.

United States v. Jordan, 447 Fed. App'x. 574, 575-76 (5th Cir., Oct. 26, 2011) (per curiam) (designated unpublished). Jordan was convicted of conspiracy to launder money knowing that the proceeds were from illegal drug activity and conspiracy to transport unlawful aliens. The description of the facts by the Fifth Circuit suggests that Jordan cannot demonstrate that his conviction would have been vacated if counsel had challenged the sufficiency of the evidence. See United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000) ("the prejudice prong first requires a showing that [the Fifth Circuit] would have afforded relief on appeal.").

**D.   Request for Evidentiary Hearing**

Jordan requests an evidentiary hearing. This Court is required to hold an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Rivas v. Lopez, 678 F.3d 353, 358 (5th Cir. 2012). This Court has examined Jordan's claims and finds that the motion and the records of the proceeding conclusively establish that he is not entitled to relief. The Court denies his motion for evidentiary hearing.

14

**E.      Other Filings by Jordan**

Beginning in October 2013, Jordan began filing demands for documents and other motions and filings that are not authorized in § 2255 proceedings. D.E. 260, 262, 264, 265, 267, 268, 271, 272, 273, 274, 276. The Court has not considered these documents as they have no bearing on the disposition of Jordan's § 2255 motion. All relief requested in these filings is denied.

## V.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Jordan has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could

debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Jordan is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## VI.  CONCLUSION

For the foregoing reasons, Tyrone Eugene Jordan's motion for evidentiary hearing (D.E. 248) is DENIED, and his motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 247) is DENIED. He is also denied a Certificate of Appealability.

Ordered this __25__ day of _____June_____ 2014.

_____
HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE