1                    IN THE UNITED STATES DISTRICT COURT

2                   FOR THE SOUTHERN DISTRICT OF TEXAS

3                             HOUSTON DIVISION

4    UNITED STATES OF AMERICA         §      CASE NO. 2:10-CR-20-3
                                       §      HOUSTON, TEXAS
5    VERSUS                            §      THURSDAY,
                                       §      MARCH 12, 2015
6    TYRONE EUGENE JORDAN              §      10:12 A.M. TO 10:46 A.M.

7

                              PROBABLE CAUSE HEARING
8
                    BEFORE THE HONORABLE NANCY K. JOHNSON
9                      UNITED STATES MAGISTRATE JUDGE

10

11         APPEARANCES:                      SEE NEXT PAGE
           CASE MANAGER:                     SHANNON JONES
12         ELECTRONIC RECORDING OFFICER:     SUZANNE GUEVARA

13

14

15

16

17

18

19

20                      TRANSCRIPTION SERVICE BY:

21              JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                       935 ELDRIDGE ROAD, #144
22                     SUGAR LAND, TEXAS 77478
                Tel: 281-277-5325 ▼ Fax: 281-277-0946
23                  www.judicialtranscribers.com

24

        Proceedings recorded by electronic sound recording;
25          transcript produced by transcription service.

1                              APPEARANCES:

2

3  FOR THE PLAINTIFF:            HAYES JENKINS, ESQ.
                                 AUSA
4                                1000 LOUISIANA, STE. 2300
                                 HOUSTON, TX  77002
5

6
   FOR THE DEFENDANT:            PRO SE
7

8
   ALSO PRESENT:                 PAT BREWSTER, USPO
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                                      INDEX

2

3    WITNESS:              Direct      Cross      Redirect      Recross

4    PAT BREWSTER, USPO
      By Mr. Jenkins      5           .            .            .
5     By Defendant Jordan             9            .            .

6

7    EXHIBITS:                        Marked      Offered      Received

8    Government's:
     Exhibit 1                         8           8            9
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        HOUSTON, TEXAS; THURSDAY, MARCH 12, 2015; 10:12 A.M.
 2            THE COURT:  All right, in United States versus
 3   Tyrone Jordan.
 4            Mr. Jenkins, are you ready?
 5            MR. JENKINS:  I guess, Your Honor, I would like to
 6   inquire as to how the Court would like to proceed.  We have
 7   -- we're waiting on one witness, which is Deputy Marshal
 8   Ramos, Dora Ramos, but we do have Brewster here.  We can put
 9   him on so we can get started.
10            THE COURT:  All right, have you talked to
11   Ms. Ramos -- Marshal Ramos this morning?
12            MR. JENKINS:  I have not spoken to Marshal Ramos.
13   I have spoken with Mr. Brewster.
14            THE COURT:  All right.
15            USM:  Excuse me, Judge, Dora is on her way.
16            THE COURT:  Okay.
17            USM:  She should be right here.
18            THE COURT:  All right, then call your witness and
19   we'll see where we go.  Call Mr. Brewster.
20            ME. JENKINS:  All right.  We will
21            THE COURT:  You ready to go, Mr. Jordan?
22            DEFENDANT JORDAN:  Yes, Your Honor.
23            THE COURT:  All right, have a seat.
24            DEFENDANT JORDAN:  I can have a seat?
25            THE COURT:  Yes, of course.
```

1       (Witness sworn.)

2               DIRECT EXAMINATION OF PAT BREWSTER

3  BY MR. JENKINS:

4  Q    Bring that mic up to you.

5            Sir, could you state your full name and for the

6  Record could you spell your last name?

7  A    Pat Brewster, B-R-E-W-S-T-E-R.

8  Q    And what is your occupation, sir?

9  A    United States Probation Officer.

10 Q    And could you just generally describe your current

11 duties and responsibilities?

12 A    I am a Supervision Officer with the Probation

13 Department.

14 Q    During the course of your official duties, sir, did you

15 become familiar or acquainted with a one Tyrone Eugene

16 Jordan?

17 A    Yes, sir.

18 Q    Do you see that individual seated here in these

19 proceedings?

20 A    Yes I do.

21 Q    Would you state where he's seated and how he's attired?

22 A    He is the gentleman in orange with the glasses on at

23 the table.

24            MR. JENKINS:  May the Record so reflect, Your

25 Honor.

1          THE COURT:  Yes, it will.

2      (Defendant Jordan identified.)

3  BY MR. JENKINS:

4  Q    Now, when did you become first familiar with

5  Mr. Jordan?

6  A    I met Mr. Jordan in the halfway house before he was

7  released as an introduction to probation and to start his

8  case management process.

9  Q    All right, was he part of the -- was he going through a

10 criminal proceeding or something of that nature at that

11 time?

12 A    No criminal proceedings at that time.

13 Q    What is his criminal history?

14 A    He has no criminal history.  He is on supervision for

15 the conspiracy to launder monetary instruments, as well as

16 conspiracy to transport illegal aliens, and he doesn't have

17 any prior to that.

18 Q    And when did that conviction occur?

19 A    He was convicted before a jury on April 14th, 2010.

20 Q    Before what Division?

21 A    That is Southern District of Texas in the Corpus

22 Christi division.

23 Q    And before what judge?

24 A    The Honorable Hayden Head.

25 Q    What was his sentence in that case?

1  A    At that time he was sentenced to 120 months'

2  imprisonment to each count and three years' supervised

3  release.

4  Q    All right, at some point in time during the course of

5  that supervised-release term, was a complaint filed by the

6  United States Department of Probation?

7  A    Yes.

8  Q    And what was the nature of the complaint that was

9  filed?

10 A    The nature of the complaint is he violated his

11 conditions of supervision by a new law violation, which was

12 filing a false lien against a federal official.

13 Q    And who was the federal official involved that he filed

14 a false claim against?

15 A    He filed it both against Judge Hayden Head, as well as

16 the U.S. Attorney in Corpus, Julie Hampton.

17 Q    And what was the amount of the false claim that was

18 filed?

19 A    It was approximately 6.5 million.

20 Q    And is that currently pending?

21 A    Correct.

22 Q    And is it -- based on your experience and knowledge and

23 research, -- an unlawful and illegal lien?

24 A    Correct.

25 Q    Does it violate the conditions of the term of

1  supervised release?

2  A     Yes, it does.

3  Q     And do you have other comments to make about the

4  violation that's alleged in your complaint?

5  A     No, we just received a copy of the lien from the Harris

6  County District Clerk's Office, which he filed it here.

7             MR. JENKINS:  May I approach the witness, Your

8  Honor?

9             THE COURT:  You may.

10 BY MR. JENKINS:

11 Q     Okay, I will hand you what's been marked as

12 Government's Exhibit Number 1.  Would you state for the

13 Record what that document is and what it says?

14 A     That is the lien that he filed here in Harris County

15 Court against Judge Head, as well as the AUSA in Corpus,

16 Julie Hampton.

17 Q     All right and is that consistent with the testimony

18 that he's previously given?

19 A     Yes.

20            MR. JENKINS:  All right, thank you very much.  We

21 offer up Government's Exhibit Number 1, Your Honor.

22            THE COURT:  Show it to Mr. Jordan.

23            Any objection, Mr. Jordan?

24            DEFENDANT JORDAN:  No objection, may I get a copy

25 of this, if this is the exhibit that we'll be discussing?

1          MR. JENKINS:  Just go ahead and give him an extra

2    copy.

3          THE COURT:  Okay you can get an extra copy.

4          All right, it's admitted.

5       (Government's Exhibit 1 received in evidence.)

6          MR. JENKINS:  Your Honor, at this moment, that is

7    all we'll have for this witness, we'll pass the witness at

8    this time.

9          THE COURT:  All right, Mr. Jordan, do you have any

10   questions for Mr. Brewster?

11         DEFENDANT JORDAN:  Yes, Your Honor, I do.

12         THE COURT:  You're allowed to question from a

13   seated position, if it's more comfortable, Mr. Jordan,

14   that's allowed in our local rules.

15         DEFENDANT JORDAN:  I would be more comfortable

16   standing.

17         THE COURT:  That's fine, as you wish.

18         DEFENDANT JORDAN:  And is the mic I would use?

19         THE COURT:  Yes.

20              CROSS-EXAMINATION OF PAT BREWSTER

21   BY DEFENDANT JORDAN:

22   Q    All right, Mr. Brewster, you stated that you became

23   aware of this alleged lien that claim, who gave you notice

24   of that, how did you become aware of it?

25   A    I was in contact with the United States Marshal

1  Service, as well as the FBI.

2  Q    Okay, and you weren't served -- your name isn't on it

3  and you weren't served these documents personally?

4  A    Correct.

5  Q    And here in the exhibit it has a cover sheet and let

6  the Record show that this cover sheet was not a part of the

7  record that was filed with the Clerk, is that correct, or --

8  A    I do not know.

9        THE COURT:  What are we talking about is the cover

10  sheet?

11        DEFENDANT JORDAN:  The cover sheet is the first

12  page of the exhibit, which was handed to me.  This one being

13  a cover letter, which was not on file in -- which was not a

14  part of the file --

15        THE COURT:  Okay, just so I'm clear, what you're

16  talking about it's a letter dated January 25th, 2015

17  addressed to Julie Kay Gowan Hampton.

18        DEFENDANT JORDAN:  Yes, Your Honor.

19        THE COURT:  Is that what we're talking about?

20  That's the cover sheet?

21        DEFENDANT JORDAN:  Yes, ma'am.

22        THE COURT:  All right.

23        DEFENDANT JORDAN:  And it's --

24        THE COURT:  All right, go ahead.

25        DEFENDANT JORDAN:  There's missing pieces here.

1          THE COURT:  I'm sorry?

2          DEFENDANT JORDAN:  There's missing -- some

3  documents that are missing in the exhibit, but we'll go with

4  the exhibit, which is just Julie Kay Gowan Hammond --

5  Hampton.

6  BY DEFENDANT JORDAN:

7  Q    In your -- it is your testimony before this court that

8  these -- this filing, which is an affidavit, is false is

9  that your testimony?

10  A    That is my understanding, yes.

11  Q    Do you know them to be false or do you believe them to

12  be false?

13  A    I believe them to be false.

14  Q    And have you had an opportunity to read the affidavit?

15  A    I did read -- review the affidavits.

16  Q    And would you like to review them at this time?

17  A    I don't feel I need to.

18  Q    All right, and if you read the affidavit is there

19  anything in there -- first of all, can you identify your

20  name in any of the pages of the affidavit?

21  A    My name is not in there.

22  Q    Outstanding and you can -- and it is your testimony

23  that you were not served none of these affidavits; is that

24  correct?

25  A    Not formally.

1   Q    Outstanding, and is it your testimony that -- excuse

2   me, and then having read the -- you state you've read the

3   affidavit, is there anything in your -- today that you can

4   state in that affidavit that is false from your personal

5   knowledge?

6   A    Well it's my understanding that it is a false lien.

7   Q    I'll restate, so is the answer your understanding -- so

8   the -- so would the --

9   A    I'm not sure I understand what you're asking me.

10  Q    Well, I'll restate -- I'll restate the question.

11          Having read the affidavit, sworn statement

12  affidavit, which you've already testified doesn't have your

13  name, nor was you served, is there any statement in that

14  affidavit that you can state is false?

15  A    Yes.

16  Q    That you read?

17  A    It's my understanding that the document is a false

18  lien.  That fact that you're putting Judge Head, as well as

19  that AUSA Hampton, as the people on the lien is false to me.

20  Q    So the answer would be --

21  A    Yes.

22  Q    You don't -- you cannot state that it's -- that any

23  statement in there is false?

24          THE COURT:  That's not what he said, Mr. Jordan.

25          DEFENDANT JORDAN:  Yes, ma'am.

1  BY DEFENDANT JORDAN:

2  Q    Can you clarify to me what is it -- that I'm missing?

3  A    I'm not sure I understand --

4  Q    It is your understanding which means?

5  A    It's my understanding that the lien is false and -- but

6  -- so by reading that lien, yes, it is false, correct.

7  Q    So if it's your understanding -- that means you would

8  have no personal knowledge that any statement in there is

9  false?

10          THE WITNESS:  I'm not sure I understand that

11  question, Your Honor.

12          THE COURT:  Let's move on, Mr. Jordan.

13  BY DEFENDANT JORDAN:

14  Q    Any cover sheet in your -- that you have, do you

15  realize that the statement on the people that were serve it

16  states "Notice of lien is not a lien?"

17  A    I did read that.

18  Q    And so if it's not a lien, then how could the lien be

19  false?

20  A    That was a little confusing to me, as well, that it's a

21  lien that says it's not a lien.

22  Q    So you have no ability to be able to state that the

23  affidavit is false?

24  A    I'm sorry, I didn't quite understand that question

25  either.  It's my understanding that the lien is false, yes.

1  Q    And what -- it's your understanding, okay.

2  A    And it's my understanding that --

3  Q    I'll accept that, that's your understanding.  Can you

4  tell if you've -- do you have a Bar card or have been to law

5  school?

6  A    No.

7  Q    And so on what grounds or basis can you establish that

8  the affidavit or the claim in the affidavit is false, by

9  grounds are you able to base that?

10 A    By the fact that there is no official judgment against

11 Judge Head and Julie Hampton that you're basing the fact on

12 the lien.

13 Q    I'll remind you that a notice of lien is not a lien.

14         Can you -- maybe the issue we're having is -- the

15 terminology of lien, can you define lien from your

16 perspective or your understanding, what is a lien?

17 A    My understanding of a lien is that you are expecting

18 them to pay you that money.  That the person you're putting

19 that lien on is now obligated to pay you the money that

20 you're requesting.

21         THE COURT:  Mr. Jordan, let me just shortcut this,

22 you have established he is not a lawyer.  You're asking him

23 a legal question, let's move on.  The Court knows what a

24 lien is.

25         DEFENDANT JORDAN:  But he's making the claim and

1   if he doesn't understand the -- if doesn't properly

2   understand that there's various forms of liens, then he can

3   misconstrue that -- having no knowledge of the documents --

4          THE COURT:  The issue --

5          DEFENDANT JORDAN:  -- that the lien is not only

6   official, but is on the -- yes, ma'am.

7          THE COURT:  The issue is whether or not you filed

8   this.

9          DEFENDANT JORDAN:  Oh, that's not in question.

10          THE COURT:  These documents.

11          DEFENDANT JORDAN:  That's not the issue, the issue

12   is it had a stamp filed from the Clerk.

13          THE COURT:  Right, and you filed this?

14          DEFENDANT JORDAN:  Yes.

15          THE COURT:  All right.

16          DEFENDANT JORDAN:  But it's not --

17          THE COURT:  So, you're quibbling that it's really

18   not a lien.

19          DEFENDANT JORDAN:  No, it -- no, notice of lien is

20   not a lien.  It's a notice --

21          THE COURT:  Are any of these papers a lien in your

22   view?

23          DEFENDANT JORDAN:  Is any of the papers?  No,

24   they're -- it's actually not a lien, Your Honor, no.

25          THE COURT:  All right, so what was the point of

1    this filing?

2              DEFENDANT JORDAN:  The filing is to one, state by

3    affidavit form the -- and summarize the proceedings that are

4    relating to a open and pending civil case and it was to not

5    -- and the claim was not upon the officials.  The claim

6    regarding -- and all we had in evidence is Julie K. Hampton

7    Gowan this is all we have in evidence and so, but if we read

8    this amount is based on a contract that was established,

9    never rebutted, over a year ago and so it's established by

10   law, it's been presented, she's never --

11             THE COURT:  What contract are you talking about?

12             DEFENDANT JORDAN:  The contract that is --

13             THE COURT:  You have a contract between --

14             DEFENDANT JORDAN:  The contract -- yes, the

15   contract is stated in there that I claim the interest on.

16   It's not the -- it's not against the official, the claim is

17   actually against the contract.

18             THE COURT:  You've lost me, what contract do you

19   have with Julie Gowan Hampton?

20             DEFENDANT JORDAN:  Okay, is it -- Your Honor, may

21   I?

22             THE COURT:  Do what?

23             DEFENDANT JORDAN:  I have a copy -- I might have a

24   copy of the contract.

25             THE COURT:  In where?

1          DEFENDANT JORDAN:  Some --

2          THE COURT:  You're pointing to someone; I'm not

3   sure what you want.

4          DEFENDANT JORDAN:  Yes, Michelle --

5          THE COURT:  Someone in the back --

6          DEFENDANT JORDAN:  Yes.

7          THE COURT:  -- has a con -- has the contract?

8          DEFENDANT JORDAN:  Yes, I did not know the --

9          THE COURT:  His wife.

10          DEFENDANT JORDAN:  Yeah, I did not -- know the --

11   I didn't know the docket number, but the contract is filed

12   in the civil action.

13          THE COURT:  All right, Mrs. Jordan, do you have a

14   contract?

15          MS. JORDAN:  Yes.

16          THE COURT:  Hand it to Mr. Jordan.

17          DEFENDANT JORDAN:  Thank you.

18          Your Honor, I hold in my hand a contract that is

19   related to a civil action that is pending in the Southern

20   District of Texas, Corpus Christi, which was filed -- which

21   was served in a private -- which was a private communication

22   between myself privately and Julie K. Hampton, wherein due

23   to her failure -- due to the proceedings in action and a

24   civil action on her and a failure to defend.  I established

25   the contract, served it to her --

1            THE COURT:  No, I don't understand.

2            Is that document -- is your contract signed by

3    Julie Hampton?

4            DEFENDANT JORDAN:  No, Your Honor, it was

5    presented in -- or established based on performance.  It's a

6    performance style contract and this was established --

7            THE COURT:  I'm not familiar with that kind of

8    contract, Mr. Jordan.

9            DEFENDANT JORDAN:  Well it's established under

10   UCC, Your Honor, where performing --

11           THE COURT:  All right.  Well, we're not under the

12   UCC, okay?

13           DEFENDANT JORDAN:  Well, the Texas law has a

14   contract -- I mean, the law which is pretty much Texas

15   Business Code.

16           THE COURT:  Ms. Hampton is not under the UCC,

17   unless she's selling something.

18           Is she selling something?

19           DEFENDANT JORDAN:  No, she's not selling anything,

20   Your Honor.

21           THE COURT:  Right.

22           DEFENDANT JORDAN:  It's a contract.

23           THE COURT:  So she's not under the UCC, all right?

24   So what else do you have, Mr. Jordan?

25           DEFENDANT JORDAN:  Well, the contract was never

1   rebutted.  The --

2          THE COURT:  There's no contract, Mr. Jordan.

3          DEFENDANT JORDAN:  How is it --

4          THE COURT:  Do you have any other questions for

5   Mr. Brewster?

6          DEFENDANT JORDAN:  I --

7          MR. JENKINS:  No, Your Honor, we would have only

8   Redirect.

9          THE COURT:  All right, I really was talking to

10   Mr. Jordan, I'm sorry.

11          MR. JENKINS:  Oh, he was looking my way.

12          THE COURT:  Do you have any other questions to

13   Mr. Brewster?

14          DEFENDANT JORDAN:  Yes, Your Honor.

15          THE COURT:  All right, go ahead.

16   BY DEFENDANT JORDAN:

17   A    Mr. Brewster, do you have knowledge that the parties to

18   which the affidavits, the notice of claim of interest in

19   certain instruments were filed to the parties, do you have

20   knowledge that they received them and that they were not

21   rebutted?

22   Q    Do I have knowledge that they received them?

23   A    Yes, it's an affidavit.

24   Q    I have knowledge that they know about them.  I don't

25   know if they're actually formally served, but I know that

1  they know about them, they know what's going on.

2  A    All right, being that they were served and being that

3  the law is an affidavit, if it was false the parties who

4  they were served would be -- you would think that -- in your

5  opinion would rebut those if the affidavit or the statements

6  in there were false being presented to them?

7          THE COURT:  All right, Mr. Jordan, he's not a

8  lawyer.  You seem to be asking him for legal conclusions and

9  he's not competent to render a legal conclusion.

10          DEFENDANT JORDAN:  And the reason I'm asking such

11  questions, Your Honor, is because in his presentment, in his

12  complaint, he's conclusively established them as a lien,

13  which they're just affidavits and the statements in there

14  are just summarizing the actions that are in the civil case.

15  The case is I think almost two years old, if I'm -- it's

16  almost -- yeah, about a year-and-a-half, two years old.

17          THE COURT:  All right.

18          DEFENDANT JORDAN:  And the affidavit summarizes

19  and he's making a conclusion on the affidavit claims that

20  they're false and none of the statements in the affidavit

21  can be declared false because they haven't been rebutted by

22  the parties who've been served nor have they been rebutted

23  by evidence in the civil proceeding.

24          THE COURT:  All right, we're not talking about the

25  civil proceeding right now.  They're talking about revoking

1  your supervised release because you filed these documents

2  with the Harris County Clerk and the law prohibits you from

3  filing documents.  That's the point, all right?

4           DEFENDANT JORDAN:  I have no knowledge of a law

5  which prohibits me to address the Court from filing an

6  affidavit sworn and attested to.  That's a sworn and

7  attested to statement.  I have no knowledge of such a law,

8  Your Honor.

9           THE COURT:  All right, so are you familiar with

10  1521, that's what he's saying you violated, 18 USC 1521.

11           DEFENDANT JORDAN:  That is a statutory code,

12  right?

13           THE COURT:  Correct, all right, yeah.

14           DEFENDANT JORDAN:  And the affidavits where I

15  served -- nor addressed under the statute -- or not

16  presented, they were private.

17           THE COURT:  All right, so --

18           DEFENDANT JORDAN:  And so they're not statutory --

19           THE COURT:  -- what the law prohibits is whoever

20  files, attempts to file, or conspires to file in any public

21  record or in any private record, which is generally

22  available to the public, any false lien or encumbrance

23  against the real or personal property of an individual

24  described in Section 1114 on account of the person's

25  performance of official duties.

1          DEFENDANT JORDAN:  I understand, Your Honor, --

2          THE COURT:  So, it's the filing with the Harris

3    County Clerk, that's --

4          DEFENDANT JORDAN:  So we must identify -- is this

5    -- is the claims in here against their personal property.

6    The interest -- the affidavit claims are against the

7    contract which is --

8          THE COURT:  All right, this witness is not really

9    competent to render any legal decision -- conclusions, do

10   you have any factual questions that you wish to ask him?

11         DEFENDANT JORDAN:  Based on the -- Your Honor, is

12   it possible that I can get a copy of the statute by which

13   you just read?

14         THE COURT:  I can copy it later for you, sure.

15         DEFENDANT JORDAN:  Well, could you restate it so

16   that I can properly address the question as it relates to

17   that statute?

18         THE COURT:  All right.  Shannon, he can have my

19   book.

20         But again, he can't -- he's not a lawyer, so let's

21   focus on facts.

22         DEFENDANT JORDAN:  And so -- if we're establishing

23   that he cannot make a legal determination, I have -- there

24   is no evidence in the Record that I've seen that the

25   statements or claims made in the affidavit are false and if

1  he can't say that they're false, then he can't basically

2  conclude that they are unlawful or broke the law.  There's

3  no evidence that supported that any -- that an injured party

4  has come to rebut and said that these claims in the

5  affidavit, which clearly just summarizes the actions in the

6  proceedings in the civil matter, which is in the record,

7  have been rebutted.  So he -- and the parties whom they were

8  served have not rebutted the claims therein made and so if

9  they haven't rebutted the affidavit, then -- and he's not a

10 party to those affidavits then he can't say they were false

11 because the parties whom they were served have not rebutted

12 and stated that any claims therein as false as presented to

13 them.

14         THE COURT:  All right, so -- right now, we're just

15 talking about probable cause.

16         DEFENDANT JORDAN:  Yes, Your Honor.

17         THE COURT:  You know, your arguments kind of are

18 going to the merits of this dispute, which will be

19 determined by the Judge in Corpus Christi.

20         Do you have any other arguments?

21         DEFENDANT JORDAN:  I would like to restate for the

22 Record that he's -- that Mr. Brewster has stated on the

23 Record that he's not competent to make a legal

24 determination, he's not a lawyer; however, he has stated

25 having read the affidavits, assumed that they are false and

1  an assumption with no affidavit -- with no evidence to

2  support it, hither, it may under the penalty of perjury, he

3  has -- you know, I believe his claims are falsely made to

4  the degree that in his filing of false lien against

5  Honorable Hayden Head in the amount of -- there was nothing

6  in the Record, nothing in these affidavits, and nothing --

7  actually there is no claim filed against -- where Honorable

8  Head is required to make any monetary obligation.

9         The lien gave notice that to him that I have

10  interest in him holding up his oath of office in rendering

11  an Order in the civil action.  My claim was against his oath

12  of office, that's it because this case has been pending for

13  so long.  He has no monetary obligation; therefore, the

14  claims made in law violation false lien claims is therefore,

15  not properly asserted and therefore false.

16         THE COURT:  All right.

17         DEFENDANT JORDAN:  The claims made against -- in

18  violation of filing of false liens against Julie K. Hampton

19  as presented here, is not against -- but it asserts a claim

20  against the contract, which has never been rebutted or

21  denied, and if you -- and the law states that if you --

22  because in those claims it's been in the civil action, it

23  had been established that fraud is a part of that civil

24  action which has never been rebutted by evidence, and this

25  was the purpose of privately communicating with Julie K.

1  Hampton and it bears she has not rebutted nor declared that

2  the contract, the affidavits presented, nor the filing,

3  which he states is false.

4         THE COURT:  All right.

5         DEFENDANT JORDAN:  And so therefore, I, you know,

6  -- Mr. Brewster's claims and petition is without merit

7  and --

8         THE COURT:  All right.  Do you have any evidence

9  to present other than your argument that you've just made to

10  me?

11         DEFENDANT JORDAN:  Yes, I have a -- the Record is

12  presented to -- in here it shows that the affidavits were

13  presented and there's a couple other ones presented to Julie

14  K. Hampton as it relates to the contract.  A copy was sent

15  to Hayden Head in reference to my claim and interest in the

16  civil action.  There was no monetary obligation or claim

17  there relayed.  He has --

18         THE COURT:  But you're filing -- you're saying

19  that there's a -- the lien claimant owes 6 million-some-odd

20  dollars

21         DEFENDANT JORDAN:  Well -- that's only on Julie K.

22  Hampton.  That is not the one for Judge Head.

23         THE COURT:  Judge Head doesn't have a number?

24         DEFENDANT JORDAN:  No, no.  He doesn't have -- no,

25  he has no monetary obligation.  His obligation to me is only

1    as it relates to his duties as a Judge in the civil action.

2            THE COURT:  Then what are you putting a lien on, I

3    don't understand that?

4            DEFENDANT JORDAN:  It's -- Your Honor, once again

5    I'll state notice of lien is not a lien.  I'm not filing a

6    lien against them.  I'm actually filing --

7            THE COURT:  All right, anything else, Mr. Jordan?

8            DEFENDANT JORDAN:  -- an interest and giving him

9    an interest that -- I just claim an interest in my case

10   because it's been pending and it is my understanding that

11   that a case can be dismissed for failure to prosecute and so

12   I -- and then it just -- there's nothing more for me to file

13   in the case.  Motion for summary judgment, that's what this

14   relates to, so I just basically gave the judge notice that I

15   claim an interest in this case.

16           THE COURT:  All right, thank you.

17           DEFENDANT JORDAN:  And it --

18           THE COURT:  All right, thank you, Mr. Brewster,

19   you may stand down.

20           THE WITNESS:  Thank you, Your Honor.

21       (Witness steps down.)

22           THE COURT:  The Court finds --

23           DEFENDANT JORDAN:  I never -- Your Honor, I never

24   got a chance to present the additional evidence.

25           THE COURT:  What do want to present, Mr. Jordan?

 1           DEFENDANT JORDAN:  Can you present -- give me the

 2   notice?

 3       (Pause in the proceedings.)

 4           DEFENDANT JORDAN:  In my hand, Your Honor, and I

 5   can present you a copy --

 6           THE COURT:  What is it?

 7           DEFENDANT JORDAN:  It's a -- on February 23rd.

 8           THE COURT:  Of what year?

 9           DEFENDANT JORDAN:  This year.

10           THE COURT:  This year, okay.

11           DEFENDANT JORDAN:  2015, yeah.  This basically

12   states that the notice, the affidavits were served on the

13   parties therein named to include the U.S. -- the attorney --

14   and that there was no -- and because a legal and moral

15   obligation to -- you know, to respond to an affidavit.

16           THE COURT:  No.

17           DEFENDANT JORDAN:  There's a --

18           THE COURT:  There's not.  It's my understanding

19   that that Corpus Christi case, your Corpus Christi case

20   against these individuals is closed.

21           DEFENDANT JORDAN:  No, Your Honor, you just stated

22   Monday that it has an Order for the 9th.  You just stated

23   that Monday.

24           THE COURT:  That's in your revocation case; this

25   case, this criminal case, not the civil case.

1        DEFENDANT JORDAN:  Your Honor, you're saying the

2   civil case is closed?  I have no knowledge of that.

3        (The Court confers with staff.)

4        DEFENDANT JORDAN:  Is it closed or is that --

5        THE COURT:  That's what it looks like on the

6   docket sheet.  It's closed.

7        DEFENDANT JORDAN:  Because what your assistant

8   printed out Monday says that we have a hearing for next

9   month on the 9th.

10       THE COURT:  That's in this case.  The criminal

11  revocation of your supervised release, not the civil case.

12       DEFENDANT JORDAN:  Oh, I misunderstood --

13       THE COURT:  Yeah, so all right, anything else?

14       DEFENDANT JORDAN:  I had no knowledge -- Your

15  Honor, I had no knowledge -- and this is notice that -- and

16  this is evidence that the affidavits have not been rebutted,

17  they haven't been denied.

18       THE COURT:  All right, Court finds probable cause.

19  You'll be moved down to Corpus Christi for your hearing next

20  month.

21       Is that on the 9th?

22       DEFENDANT JORDAN:  Your Honor, --

23       THE COURT:  Then it's on the 9th.

24       DEFENDANT JORDAN:  Your Honor, I find that -- what

25  evidence would you find that there's probable cause exists

1  based on the fact that --

2       THE COURT:  Mr. Jordan, I don't have to make

3  written findings on a probable cause determination.  I just

4  find it, all right?  Based on what I've heard, what you've

5  told me mostly, there's probable cause, okay?  So you may

6  have a seat.

7       (Proceedings adjourned at 10:45 a.m.)

8                    *  *  *  *  *

9       *I certify that the foregoing is a correct*

10  *transcript to the best of my ability from the electronic*

11  *sound recording of the proceedings in the above-entitled*

12  *matter.*

13  */S/ MARY D. HENRY*

14  *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

15  *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**D-337*

16  *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

17  *JTT INVOICE #54137*

18  *DATE:  JULY 8, 2015*

19

20

21

22

23

24

25